# Bessemer & Lake Erie Railroad Co., Appellant, *v.* Ford Collieries Co.

*Carriers—Railroads—Demurrage.*

1. Ordinarily a carrier cannot recover demurrage until he has fully complied with the contract of carriage.

*Practice, C. P.—Pleading—Penalty—Evidence—Statement of claim—Affidavit of defense.*

2. Where a plaintiff seeks to recover a penalty he must set forth in his statement of claim, as well as prove, all the circumstances which are alleged to justify its imposition.

3. Averments of the statement not denied by the affidavit and offered in evidence at the trial, will be treated as conclusively admitted.

4. Where it is meant to prove an admission in an affidavit of defense, it alone should be offered in evidence, stating this is done for the particular purpose desired to be proved.

*Carriers—Railroads—Damage—Storage of cars—Duty of carrier—Interstate commerce.*

5. Where freight is consigned to a particular point for transshipment, it is the duty of the consignee to provide a means for unloading and carrying it away; if he does not do this, the carrier is not obliged to hold the cars at that point, but may place them in a storage yard convenient thereto, if legally authorized so to do.

6. This it may do without first carrying them to the trans-shipping point, if prepared to prove the consignee was not ready to receive and remove the freight.

7. Enacted rules should be construed in the light of the facts and circumstances calling for their passage.

8. Where the Interstate Commerce Commission has approved a rule relating to an administrative practice of a carrier engaged in interstate commerce, it is not necessary to have it reapproved in order to enable the carrier to exercise the rights given thereby.

*Practice, C. P.—Trial by court—Passing on evidence—Exceptions.*

9. Where evidence has been offered and objected to, and the decision thereof has been reserved until the end of the case, the trial judge must dispose of the offer and objection in time to enable the party against whom he decides to obtain an exception thereto.

*Appeals—Incomplete record—Reversal of judgment—Remittal of record.*

10. On the trial by the court without a jury, under the Act of April 22, 1874, P. L. 109, if the record is so incomplete that an appellate court cannot with certainty determine what the evidence in the case is, or what the findings of the court below are, especially if it appears that much was assumed to be true which was not proved, the judgment will be reversed, and the record remitted for further proceedings.

Argued February 6, 1922. Appeal, No. 64, Oct. T., 1921, by plaintiff, from judgment of C. P. Butler Co., June T., 1912, No. 1, for plaintiff, on case tried by the court without a jury, in suit of Bessemer & Lake Erie Railroad Co. v. Ford Collieries Co. Before MOSCH-ZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Assumpsit for demurrage. Before REIBER, P. J.

Judgment for defendant, on case tried by court without a jury. Plaintiff appealed.

*Error assigned,* inter alia, was judgment, quoting it.

*John H. Wilson,* of *Wilson & McQuistion,* with him *Templeton, Whiteman & Rowley,* for appellant.—A rail-

road which is unable to make a delivery at the place indicated is entitled to demurrage for the delay at the filed rates. To do otherwise would constitute discrimination: Penna. R. R. v. Crutchfield, 55 Pa. Superior Ct. 346; Penna. R. R. v. Oil Co., 58 Pa. Superior Ct. 154; Central R. R. of N. J. v. Mauser, 241 Pa. 603.

*Howard Streeter,* of Detroit, Michigan, *Thos. H. Greer,* and *John G. Buchanan,* for appellee.—Under the contract of carriage in this case, the carrier was bound to make delivery at the billed destination, namely, Conneaut Harbor, Ohio: Graff v. Bloomer, 9 Pa. 114.

The duty of the carrier in this case was not modified by the tariff in effect: Penna. R. R. v. Crutchfield, 55 Pa. Superior Ct. 346; Penna. R. R. v. Oil Co., 58 Pa. Superior Ct. 154.

The facts developed in the present case show conclusively that the thing that gives rise to the application of the rate is the railroad practice and it has been repeatedly held by the Supreme Court of the United States that where such a situation develops, to wit, "where the practice gives rise to the application of the rate," the court "has no jurisdiction to adjudicate the controversy until that administrative question has been determined by the Interstate Commerce Commission": Northern Pacific R. R. v. M. J. Solum, 247 U. S. 477; Texas & Pacific Ry. v. American Tie & Timber Co., 234 U. S. 138.

OPINION BY MR. JUSTICE SIMPSON, March 6, 1922:

Conneaut Harbor, Ohio, a terminus of plaintiff's railroad, is situated on Lake Erie at the point where Conneaut Creek flows into the lake. The topography of the country is such that plaintiff had there only a track capacity for 800 cars, while 1,200 to 1,300 cars are loaded and unloaded each day, except Sunday; but at Albion, on the hill above the harbor and at a distance of about 14 miles therefrom, it has large storage yards, normally sufficient to take care of all the cars consigned to the

harbor for trans-shipment. It also has other and more distant storage yards, but nothing connected therewith has any bearing on the present controversy.

Defendant shipped from Curtisville, Penna., consigned to itself at Conneaut Harbor, a large number of cars of coal for trans-lake shipment; these were held by plaintiff at Albion for a considerable time, and the present suit is brought to recover demurrage, alleged to have accrued by reason thereof, plaintiff relying on the following rule "governing demurrage charges on lake coal," it having been approved by the Interstate Commerce Commission and in force at the time of the shipments: "Cars of coal held at Conneaut Harbor, Ohio, or intermediate storage yards, for trans-shipment, more than five days per car on the average, exclusive of Sundays and legal holidays, shall be subject to a car demurrage charge of one dollar per car per day after said five days."

When duly authorized, a carrier may recover demurrage from a shipper, if the latter fails to unload its cars within a reasonable time, the circumstances under which it is collectible being determined by custom, contract, statute or a duly authorized public authority. In the present instance the parties being engaged in interstate commerce, the Interstate Commerce Commission is the duly authorized body to determine the matter, and this it has done by the approval of the rule quoted. Since the sum thus chargeable is admittedly a penalty, however, it is important that the claimant should aver as well as prove the circumstances which are alleged to justify its imposition; but here the carrier seeks to recover for a period of time during which the cars are held in transit, before the freight reaches the destination named in the contract of carriage, though ordinarily demurrage does not begin to accrue until after this point has been reached. Under such circumstances, the statement should aver, as the basis for recovery, not only the rule, but also that defendant did not have, at the dock, the facilities to re-

ceive the freight. Upon this matter, however, the statement is wholly silent.

The affidavit of defense, among other things, avers that "the statement of claim does not state facts sufficient in law to constitute a cause of action against defendant" and that "the statement of claim does not set forth that any notices of arrival of the cars or shipments were ever sent to defendant, or that defendant ever had notice of the arrival of said cars or shipments." Subsequently, the statement was amended to cover this last objection; but it was not amended so as to aver that the cars were held for lake shipment through any neglect or default of defendant, or to explain why the cars were not taken to Conneaut Harbor, where, for all we know, defendant may have had at the dock ample facilities for immediate trans-shipment.

The parties agreed to submit the case to the court without a jury, under the provisions of the Act of April 22, 1874, P. L. 109. At the trial plaintiff offered "in evidence the pleadings in the case for the following purposes: That of showing the number of cars consigned by the defendant......for trans-lake shipment and the several dates on which the said cars so consigned arrived in the Albion yards of the plaintiff company, and the several dates on which the cars were released, the date of release being the notice to the company of the time that the defendant's boat would dock." The offer was objected to and the court said it would "not pass upon the objections until final disposition of the case." The method adopted by plaintiff to prove the facts alleged in the offer was an erroneous one, since the pleadings, if they had been properly offered, would not have established the matter alleged, though probably the objection, as made, did not cover the point. If it was meant that certain of the averments of the statement were not denied and hence were conclusively admitted (Gillespie v. Pennsylvania Co., 272 Pa. 393), the proper method was to offer those averments in evidence: Buehler v. United

States Fashion Plate Co., 269 Pa. 428.   If it was meant to offer admissions in the affidavit of defense, that paper alone should have been offered for a particular purpose, stated in the offer: Baldi v. Metropolitan Life Ins. Co., 30 Pa. Superior Ct. 213.   There were also other offers of evidence which were objected to, no action being taken thereon, for the same reason.

The court below decided the case in favor of defendant, because "the said cars of coal were held by the plaintiff company at its storage yards at Albion, Pennsylvania, at its own instance and convenience," and also because "an administrative question is presented which must be submitted first to the Interstate Commerce Commission for determination, and this court is without jurisdiction."   It did not pass upon the pending objections to the offers of evidence and, until they are decided and acquiesced in or excepted to, we cannot know exactly what evidence should be considered in determining the questions raised on the appeal.

As already stated, this record does not show that the cars were taken to Conneaut Harbor until after the period for which demurrage is claimed.   Why was this? The court below says that they were held at Albion at the instance and for the convenience of plaintiff.   But what does this mean?   Of course it was for the railroad's convenience to hold them at Albion, where there was ample storage room, rather than at Conneaut Harbor where there was but little, if any.   So, also, assuming the rule quoted covers the case, no sound reason appears why plaintiff could not do this "at its own instance," if it chose to take the risk of proving that no boats were within reach for the purpose of receiving the coal.   Appellee could not reasonably defend on the ground that plaintiff had not taken the coal to the harbor, if the only result of so doing would have been to haul it back to Albion practically at once.   But was this the case? There is neither averment nor proof on the point, and we cannot assume it to be so.   There is no presumption

that when a carrier accepts freight to be delivered at a given point, and the cars do not arrive there within a reasonble time, that the shipper and not the carrier was to blame; much less is it true that the shipper may be penalized upon the theory, without averment or proof, that he was in the wrong and not the carrier, which had not yet fully complied with its contract of carriage.

It was said by plaintiff that none of the storage yards are a lake shipping point; this was not denied by defendant, who says, however, that there is no proof on the point and hence it should not be considered; to which plaintiff replied that this was assumed throughout the proceedings, each side desiring the court below to decide only the question of the proper construction of the rule, under the facts known to both parties, though not directly proved. It is certain there is no such proof, but if the statement be correct it may be an important factor in determining the meaning of the rule, and this is especially so since plaintiff has no right to carry on a storage business, but may only store cars and merchandise as incidental to its duty to transport; a principle of law recognized by the Interstate Commerce Commission when it says these demurrage charges are not to be "considered in any sense as a source of revenue, but [only] . . . . . . to act as a penalty for unnecessary delay . . . . . . and to stimulate the release of cars under load, to the mutual benefit of the shipping public and the railroad, by reason of increasing the available car supply."

We do not deem it necessary to express an opinion regarding the additional objection that plaintiff's claim cannot be sustained because the alleged administrative practice of storing the cars at Albion, though consigned to Conneaut Harbor, had not been approved by the Interstate Commerce Commission; for if a proper construction of the rule authorizes this to be done, then the practice has been sanctioned by the approval of the rule itself; and this defendant's counsel frankly admit. It should perhaps be noted also that this question is not

raised in the affidavit of defense or any of the amendments thereto.

Neither the evidence nor opinion of the court below throws light upon the matters above referred to, and though ordinarily we would for this reason resolve them in favor of defendant, because there is nothing upon the record to overcome the presumption that the judgment is correct, we are not willing to do so in this instance, largely because the whole course of the trial and argument leads us to believe much was assumed to be true which was not proved.

Upon a consideration of all the matters stated, we have concluded to reverse the judgment and remit the record, with leave to the parties to amend their pleadings, to offer additional evidence, and to present requests for findings, as they shall be advised; and to the court to rule upon the questions raised, to substitute another and fuller opinion for the present one, if it desires so to do, or to amplify the present one, and, upon the dismissal of any exceptions which may be filed, to enter such judgment as shall be warranted by the facts then found.

We may also add that if, as appeared probable from the arguments in this court, there are no facts in dispute, but only questions of law to be decided, the agreement of submission may be revoked, a case-stated agreed upon and filed, and, if the right so to do is reserved (Pinkney v. Erie R. R. Co., 266 Pa. 566), an appeal taken after final judgment is entered.

The judgment of the court below is reversed and the record is remitted for further proceedings in conformity with this opinion.